**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMED MEDHI ZORGANI and SOUKAINA LAASIRI, <br><br>     Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, et al., <br><br>     Defendant. | Civ. Action No. 17-2360 (EGS) |

**MEMORANDUM OPINION**

**I.    Introduction**

  Plaintiffs Mohamed Mehdi Zorgani ("Mr. Zorgani"), on behalf of himself and all others similarly situated, and Soukaina Laasiri ("Ms. Laasiri") (collectively "Plaintiffs") bring this action against Defendants District of Columbia (the "District"); Department of Motor Vehicles ("DMV"); former Director of DMV Lucinda Babers in her individual capacity; and employees of the District and DMV John and Jane Does 1-9 ("Does 1-9"). Plaintiffs bring four claims against the Defendants due to the allegedly wrongful suspension of Mr. Zorgani's license: (1) negligence; (2) violation of statute; (3) deprivation of rights under 42 U.S.C. § 1983; and (4) loss of consortium. *See generally* Am. Compl., ECF No. 18. Plaintiffs also allege a class action. *See id.* ¶¶ 26-31.

Pending before the Court is Defendants the District and former DMV Director Babers' Partial Motion to Dismiss and Partial Motion for Summary Judgment. *See* Mem. of P. & A. in Supp. of Defs.' Partial Mot. to Dismiss & Partial Mot. for Summ. J. ("Defs.' Mot."), ECF No. 19-1. Defendants move to dismiss: (1) all claims against the DMV; (2) negligence and Section 1983 claims against Ms. Babers; (3) Mr. Zorgani's and Ms. Laasiri's loss of consortium claim; and (4) the Section 1983 failure-to-train claim against the District. *See generally* Defs.' Mot., ECF No. 19-1. Defendants seek summary judgment on Plaintiffs' Section 1983 policy-or-custom claim against the District. *See id.* Defendants also argue that the Court should dismiss Plaintiffs' class action claims. *See id.*

Upon careful consideration of the motion, opposition, and reply thereto, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Partial Motion to Dismiss, and **DENIES** Defendants' Partial Motion for Summary Judgment.

## II. Background

### A. Factual

The Court assumes the following facts alleged in the complaint to be true for the purposes of deciding this motion and construes them in Plaintiffs' favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). On May 24, 2014, Mr.

2

Zorgani was issued a $100 traffic ticket for failure to yield the right of way. Am. Compl., ECF No. 18 ¶ 8.[1] On July 30, 2014, Mr. Zorgani paid the ticket and late payment fine online. *Id.* Following that payment, Defendants did not notify Mr. Zorgani that his license would be suspended, nor did they notify him that he needed to take any action to avoid the suspension of his license. *Id.* ¶¶ 10-11. On August 21, 2014, Defendants suspended Mr. Zorgani's license. *Id.* ¶ 12. Defendants did not notify Mr. Zorgani that his license had been suspended. *Id.* ¶ 14. Thereafter, Defendants informed the Metropolitan Police Department ("MPD") that Mr. Zorgani's license had been suspended. *See id.* ¶ 13.

Early in the morning of November 8, 2014, Mr. Zorgani was stopped by Officer Parrish of the MPD. *Id.* ¶ 17. Officer Parrish queried Mr. Zorgani's license through the Third District Dispatcher, *id.* ¶ 18; and was informed that the license had been suspended on August 21, *id.* ¶ 19. Mr. Zorgani was then placed under arrest and held in jail overnight. *Id.* ¶ 20.

After he was released, on November 8, 2014, Mr. Zorgani went to the DMV to inquire about his license suspension. *Id.* ¶ 22. The DMV clerk informed him that his license had been

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

suspended in error and apologized. *Id.* Ms. Laasiri had no knowledge of her husband's whereabouts the night of November 8, 2014. *Id.* ¶ 24.

### B. Procedural

Plaintiffs filed their Amended Complaint on April 24, 2019, containing the following Counts: (1) Count I for negligence against the District, Ms. Babers in her individual capacity, and Jane and John Doe DMV employees, *id.* ¶¶ 32-41; (2) Count II for violation of statute against the District, Ms. Babers in her individual capacity, and Jane and John Doe DMV employees, *id.* ¶¶ 42-46; (3) Count III for violation of Section 1983: (a) against Ms. Babers in her individual capacity and against individual Jane and John Doe employees; (b) failure-to-train claim against the District; and (c) policy-or-custom claim against the District, *id.* ¶¶ 47-74; and (4) loss of consortium, *id.* ¶¶ 75-77.

Defendants moved to dismiss all but the negligence claim against the District, and for summary judgment on Section 1983 claims against the District. *See* Defs.' Mot., ECF No. 19-1 at 1-2. Plaintiffs filed their opposition on May 30, 2019, *see* Pls.' Opp'n Defs.' Partial Mot. Dismiss & Partial Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 26; and Defendants filed their reply brief on June 20, 2019, *see* Defs.' Reply Pls.' Opp'n Defs.'

Partial Mot. Dismiss & Mot. Partial Summ. J. ("Defs.' Reply"),
ECF No. 30. The motions are ripe for adjudication.

### III. Standard of Review

#### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) tests the legal sufficiency of a complaint. *Browning v.
Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief, in order to give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
555 (2007) (citation and internal quotation marks omitted). The
plaintiff need not plead all of the elements of a prima facie
case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S.
506, 511-14 (2002); nor must the plaintiff plead facts or law
that match every element of a legal theory, *Krieger v. Fadely*,
211 F.3d 134, 136 (D.C. Cir. 2000).

Despite this liberal pleading standard, to survive a motion
to dismiss, a complaint "must contain sufficient factual matter,
accepted as true, to state a claim for relief that is plausible
on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(citation and internal quotation marks omitted). A claim is
plausible on its face when the facts pled in the complaint

5

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This pleading standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009); and must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Dismissal is not warranted unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Browning*, 292 F.3d at 242 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Even so, the court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

"In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citations and internal quotation marks omitted).

**B. Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Waterhouse*, 298 F.3d at 991. The non-moving party's opposition, however, must consist of more than mere unsupported allegations

or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## IV.  Analysis

### A. Defendant DMV is DISMISSED as *Non Sui Juris*

Defendants seek dismissal of the DMV as *non sui juris*, explaining that the DMV is a non-suable agency, *see* Defs.' Mot., ECF No. 19-1 at 16-17; and Plaintiffs agree to the dismissal, *see* Pls.' Opp'n, ECF No. 26 at 19. Accordingly, the DMV is **DISMISSED** as a party to this action. *See Lucas v. Dist. of Columbia*, 683 F. Supp. 2d 16, 18 (D.D.C. 2010) (dismissing defendant the District of Columbia Public Schools from the action as a *non sui juris* agency). The Clerk of Court is directed to **DISMISS** the DMV from this case.

### B. The Section 1983 and Negligence Claims Against Ms. Babers in Her Individual Capacity Are Outside of the Statue of Limitations

#### 1. The Section 1983 Claim Against Ms. Babers in Her Individual Capacity Is Outside of the Statute of Limitations

Plaintiffs allege Section 1983 and negligence claims against Ms. Babers in her individual capacity in the Amended

Complaint. *See* Am. Compl., ECF No. 18 ¶¶ 5, 32-41, 47-74.
Plaintiffs did not bring any claims against Ms. Babers in the
original Complaint filed on November 8, 2017, *see generally*
Compl., ECF No. 1; but added claims against her in the Amended
Complaint filed April 24, 2019, *see generally* Am. Compl., ECF
No. 18. Defendants move to dismiss the claims against Ms. Babers
on the ground that the three-year statute of limitations has
run. *See* Defs.' Mot., ECF No. 19-1 at 11-12. Defendants argue
that because Mr. Zorgani became aware that his license had been
suspended on November 8, 2014, Plaintiffs had until November 8,
2017, to bring his claims against Ms. Babers. *Id.* at 11.
However, Plaintiffs did not bring any claims against Ms. Babers
until April 24, 2019, approximately 15 months after the statute
of limitations had run. *Id.* Plaintiffs respond that the statute
of limitations does not bar their claims against Ms. Babers
because: (1) "the cause of action did not accrue until
Plaintiffs became aware of Ms. Babers' involvement and
wrongdoing that caused their injuries"; and (2) "the claims
relate back under [Federal Rule of Civil Procedure] 15(c)."
Pls.' Opp'n, ECF No. 26 at 26-27.

The parties do not dispute that a three-year statute of
limitations applies to the Section 1983 and negligence claims
against Ms. Babers. *See* Defs.' Mot., ECF No. 19-1; Pls.' Opp'n,
ECF No. 26; Defs.' Reply, ECF No. 30. Plaintiffs argue that

9

their claims against Ms. Babers did not accrue until the summer
of 2018, when "the automated license suspension policy and Ms.
Babers' role in sanctioning the District's suspension policy"
became public knowledge. Pls.' Opp'n, ECF No. 26 at 28.
Defendants respond that Plaintiffs' argument fails because they
assert a new legal theory rather than offering new facts. Defs.'
Reply, ECF No. 30 at 6.

Federal Rule of Civil Procedure 12(b)(6) "is the vehicle
for asserting the affirmative defense of statutory time
limitation." *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72,
80 (D.D.C. 2013). Because statute of limitations issues often
depend on contested questions of fact, "a defendant is entitled
to succeed on a Rule 12(b)(6) motion to dismiss brought on
statutes of limitations grounds only if the facts that give rise
to this affirmative defense are clear on the face of the
plaintiff's complaint." *Lattisaw v. Dist. of Columbia*, 118 F.
Supp. 3d 142, 153 (D.D.C. 2015). "[T]he accrual date of a § 1983
cause of action is a question of federal law that is not
resolved by reference to state law." *Wallace v. Kato*, 549 U.S.
384, 388 (2007) (emphasis omitted). A Section 1983 claim accrues
"when the plaintiff has 'a complete and present cause of
action,' that is, 'when the plaintiff can file suit and obtain
relief.'" *Id.* at 388  (quoting *Bay Area Laundry & Dry Cleaning
Pension Tr. Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201

(1997)); *see, e.g.*, *Muñoz v. Bd. of Trs. of Univ. of Dist. of Columbia,* 427 Fed. Appx. 1, 4 (D.C. Cir. 2011) (per curiam) (Section 1983 claim accrues when wrongful conduct occurs).

Here, Plaintiffs' Section 1983 claim against Ms. Babers accrued by November 8, 2014, the day Mr. Zorgani was arrested and informed that his license had been suspended. *See* Am. Compl., ECF No. 18 ¶¶ 17-20. The statute of limitations on those claims ran three years later, on November 8, 2017. Thus, the statute of limitations expired nearly a year and a half before Plaintiffs named Ms. Babers in her individual capacity in the Amended Complaint filed on April 24, 2019. *See id.*

Plaintiffs argue that they did not have a "complete and present cause of action" against Ms. Babers until they learned "that DMV's computer system [rather than a hearing examiner] made final determinations in adjudicating . . . traffic violations." Pls.' Opp'n, ECF No. 26 at 27. They argue that once they learned this, Ms. Babers was directly implicated because she had implemented and/or sanctioned this system. *Id*. They further state that they did not become aware of Ms. Babers' role until "the summer of 2018 when it became public knowledge." *Id*. at 28.

However, the Amended Complaint contains no allegations regarding Ms. Babers' role with respect to the automated suspension policy becoming a matter of public knowledge in the

summer of 2018. *See generally* Am. Compl., ECF No. 18. Nor do the documents necessarily incorporated into the Amended Complaint and attached to Plaintiffs' opposition briefing support their argument that they learned of her role in the automated suspension policy in the summer of 2018.[2] *See generally* Exs. 1, 2, and 3 to Pls.' Opp'n, ECF No. 26-3, ECF No. 26-4, ECF No 26-5. Because Plaintiffs failed to allege the date upon which they claim that their claim against Ms. Babers accrued, Defendants are entitled to prevail on their statute of limitations argument based on "the face of the plaintiff's complaint." *Lattisaw*, 118 F. Supp. 3d at 153.

### 2. The Negligence Claim Against Ms. Babers Is Outside of the Statute of Limitations

Plaintiffs' negligence claim against Ms. Babers is subject to state-law rules on accrual. *See Ajayi v. Dist. of Columbia*, No. CV 20-1019, 2021 WL 3886272, at *4 (D.D.C. Aug. 31, 2021). Under District of Columbia law, "a claim is deemed to have accrued 'from the moment a party has either actual notice of [their] cause of action, or is deemed to be on inquiry notice by failing to act reasonably under the circumstances in investigating matters affecting [their] affairs, where such an investigation, if conducted, would have led to actual notice.'"

---

[2] The Court properly takes these documents into consideration. *See Abhe*, 508 F.3d at 1059.

*Crafton v. Dist. of Columbia*, 132 F. Supp. 3d 1, 9 (D.D.C. 2015) (quoting *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011)). "If the relationship between the fact of injury and the conduct are obscure, . . . 'the claim does not accrue until the claimant knows or by the exercise of reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Id.* (quoting *Medhin*, 26 A.3d at 310). Although a claim will not accrue until a plaintiff has "*some* evidence of wrongdoing," accrual is not delayed merely because the plaintiff does not "have knowledge of the precise breadth or nature of the tortious action." *Brin v. S.E.W. Invs.*, 902 A.2d 784, 792 (D.C. 2006) (citation omitted).

Applying these standards, Plaintiffs' negligence claim against Ms. Babers also accrued by November 8, 2014. At that point, Mr. Zorgani had suffered an injury—he was arrested and detained overnight for driving with a license that had been erroneously suspended. *See* Am. Compl., ECF No. 18 ¶¶ 17-22. On that date, he also learned the cause in fact of his injury. Specifically, a clerk at the DMV notified him on November 8, 2014, that the DMV had suspended his license in error. *See id.* ¶ 22. Plaintiffs argue that Mr. Zorgani "was not aware of the cause in fact of his injury and identity of the individual responsible until he learned of the automated license suspension policy and Ms. Babers' role in sanctioning the policy." Pls.'

Opp'n, ECF No. 26 at 28. However, while Mr. Zorgani might not
have known the precise mechanism by which the DMV had wrongfully
suspended his license, he clearly had "some evidence" of the
tortious acts that caused his injury. A simple review of the
D.C. Code would have revealed Ms. Babers' possible role in this
suspension; indeed, each count in Plaintiffs' original Complaint
refers to these regulations. *See* Compl., ECF No. 1 ¶¶ 20-50.

### 3. The Section 1983 and Negligence Claims Against Ms. Babers Do Not Relate Back to The Initial Complaint

In the alternative, Plaintiffs argue that their claims
against Ms. Babers in the Amended Complaint are within the
statute of limitations period because they relate back to the
original Complaint. *See* Pls.' Opp'n, ECF No. 26 at 29.

An Amended Complaint naming a new defendant relates back to
the Original Complaint if: (1) the claim against the newly named
defendant arises "out of the conduct, transaction, or occurrence
set out—or attempted to be set out—in the original pleading";
(2) "within the period provided by Rule 4(m) for serving the
summons and complaint" the newly named defendant must have
"received such notice of the action that it will not be
prejudiced in defending on the merits"; and (3) the plaintiff
must show that, within the Rule 4(m) period, the newly named
defendant "knew or should have known that the action would have
been brought against it, but for a mistake concerning the proper

party's identity." Fed. R. Civ. P. 15(1)(c). "[R]elation back under Rule 15(c)(1)(C) depends upon what the party to be added knew or should have known." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). Accordingly, "[a] potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997).

Plaintiffs argue the Amended Complaint relates back to the original Complaint because, as Director of the DMV, Ms. Babers was on fair notice of the litigation related to the suspension policy and because she is represented by the same attorneys representing the other defendants named in the original Complaint. Pls.' Opp'n, ECF No. 26 at 29. However, Plaintiffs do not argue that the failure to name Ms. Babers was a "slip of the pen." *Id.* Furthermore, Ms. Babers cannot be held to have known/should have known that she would be added as a named defendant in her individual capacity in view of the fact that the original Complaint contains allegations about the Director and employees of the DMV but did not name her individually. *See* Compl., ECF No. 1 ¶ 32(d) (Director of the DMV was required by statute to serve Mr. Zorgani with a notice of suspension at the time of his arrest); ¶ 43 ("Upon information and belief,

15

individuals with policy making authority for the District of
Columbia and the Department of Motor Vehicles for the District
of Columbia tacitly approved of or ratified the actions of lower
ranking officials of the District of Columbia and DMV in
suspending driver's licenses of individuals including Mr.
Zorgani after the payment of fines and without notice and/or
opportunity for a hearing."). For these reasons, the Amended
Complaint does not relate back to the original Complaint
pursuant to Rule 15(c)(1)(C).

For all of these reasons, the Court **GRANTS** Defendants'
Motion to Dismiss as to the claims against Ms. Babers in her
individual capacity.[3]

### C. Plaintiffs' Section 1983 Claims

Plaintiffs sue Defendants on two Section 1983 theories.
First, they allege that Defendants failed to train employees at
the DMV to take certain actions, such as providing additional
notice, when suspending driver's licenses in cases where those
drivers paid their tickets and late fines after the 60-day
window had expired. *See* Am. Compl., ECF No. 18 ¶¶ 63-65. Second,
Plaintiffs allege that Defendants have a policy or custom of
automatically suspending driver's licenses after 60 days,

---

[3] Accordingly, the Court does not address whether Plaintiffs have
stated a negligence claim or a Section 1983 claim against Ms.
Babers.

regardless of late payments and without any notice of opportunity to be heard. *See id.* ¶¶ 66-70.

Section 1983 provides a civil remedy for an individual who has been deprived, by a person acting under color of state law, of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A municipality, like the District, may be held liable under Section 1983 for the acts of its employees, but only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry." *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citation omitted). "First, the court must determine whether the complaint states a claim for a predicate constitutional violation. *Id.* "Second, if [the plaintiff has stated a claim for a constitutional violation], then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id.*

In general, such a policy or custom

> exists when (1) the municipality adopts a
> policy that itself violates the Constitution;
> (2) the unconstitutional action was taken by
> a "policy maker" within the government; (3)
> the employees' unconstitutional actions "are
> so consistent that they have become [a]
> 'custom'" of the municipality of which the
> supervising policymaker must have been aware;
> or (4) the municipality knew or should have
> known of a risk of constitutional violations,
> but showed "deliberate indifference" to that
> risk by failing to act.

*Hurd v. Dist. of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021)
(citations omitted). A showing under any of these four theories
suffices to sustain a claim of *Monell* liability against a
municipality. *See id.* at 337, 340-42. Policies or customs may be
specific, *see Monell*, 436 U.S. at 694 (city ordinance), *Pembaur
v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (high-level
municipal policymaker decision); but also exist when a
municipality fails to train employees in a manner that makes it
"so likely" that constitutional violations will result, *City of
Canton v. Harris*, 489 U.S. 378, 390 (1989).

Defendants move to dismiss the failure-to-train claim and
move for summary judgment on the policy or custom claim. *See*
Defs.' Mot., ECF No. 19-1 at 17-29. For the reasons that follow,
the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs'
failure-to-train claim and **DENIES** Defendants' Motion for Summary
Judgment as to Plaintiffs' policy-or-custom claim.

18

### 1. Plaintiffs Have Stated a Claim for a Predicate Constitutional Violation

Mr. Zorgani alleges that he has a significant property interest in his driver's license and that the District suspended his license without providing him with notice, process, or opportunity for hearing after he paid his fine, in violation of his substantive due process rights under the Fifth Amendment to the United States Constitution. *See* Am. Compl., ECF No. 18 ¶¶ 48, 49, 65, 68.

"Once [driver's] licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 402 U.S. 535, 539 (1971). "Because [the District] is a political entity created by the federal government, it is subject to the restrictions of the Fifth Amendment, not the Fourteenth." *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954)). "The procedural due process components of the two Amendments are the same." *Id*. "Procedural due process requires that a fair hearing be held prior to permanent suspension of a driver's license." *Gilles v. Touchstone*, 676 F. Supp. 341, 344

(D.D.C. 1987); *see also Quick v. Dep't of Motor Vehicles*, 331
A.2d 319, 321 (D.C. 1975) (applying *Bell* to find that driver's
licenses may not be suspended without due process). The District
has not argued otherwise. *See generally* Defs.' Mot., ECF No. 19-
1; Defs.' Reply, ECF No. 30.

Mr. Zorgani alleges that the District suspended his license
without "any notice, process, or opportunity for a hearing after
he paid his fine and prior to suspending his license." Am.
Compl., ECF No. 18 ¶ 49. The Court concludes that Mr. Zorgani
has alleged a predicate constitutional violation.

### 2. Plaintiffs Have Not Adequately Alleged That the District Was "Deliberately Indifferent"

"In limited circumstances, a local government's decision
not to train certain employees about their legal duty to avoid
violating citizens' rights may rise to the level of an official
government policy for purposes of § 1983." *Connick v. Thompson*,
563 U.S. 51, 61 (2011). However, "[a] municipality's culpability
for a deprivation of rights is at its most tenuous where a claim
turns on a failure to train." *Id.* (citation omitted). "Only
where a municipality's failure to train its employees in a
relevant respect evidences a 'deliberate indifference' to the
rights of its inhabitants can such a shortcoming be properly
thought of as a city 'policy or custom' that is actionable under
[Section] 1983." *Harris*, 489 U.S. at 389.

20

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citing *Brown*, 520 U.S. at 407); *see also Warren v. Dist. of Columbia*, 353 F.3d 36, 28 (D.C. Cir. 2004) (observing that deliberate indifference "is an objective standard . . . simply mean[ing] that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction").

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Brown,* 520 U.S. at 409). In rare circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. Plaintiff bears the burden of proving that the lack of training actually caused the violation in

question. *See Harris*, 489 U.S. at 391 ("[F]or liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury.").

Defendants argue that the failure-to-train claim should be dismissed because Plaintiffs have not alleged anything more than Mr. Zorgani's experience with DMV, thereby failing to allege a pattern of similar constitutional violations. Defs.' Mot., ECF No. 19-1 at 21. Plaintiffs respond that they have alleged omissions in the District's training program for its DMV employees, specifically that DMV employees should be trained to:

> (a) Screen and stop automatic suspensions for citizens who paid their tickets and late fines in full;
>
> (b) Provide notice to individuals that their driver's licenses would be suspended after full payment, if payments were not made within 60 days; and
>
> (c) Notify citizens that their driver's licenses had been suspended *after* payment.

Am. Compl., ECF No. 18 ¶ 63. Plaintiffs argue that since these allegations must be taken as true for the purposes of the motion to dismiss, they have stated a claim for failure to train, *see* Pls.' Opp'n, ECF No. 26 at 23; but they are mistaken.

Plaintiffs allege that because of the failure to train DMV employees on the items identified above, Mr. Zorgani's license was suspended without any notice, process, or opportunity for a

hearing. *See* Am. Compl., ECF No. 18 ¶ 50. He alleges that under the District's policy, a driver's license is suspended if a ticket is unpaid 60 days after the issuance of the ticket even if the ticket and fine are paid after the expiration of the 60 days and before the license is suspended. *Id.* ¶¶ 52-53. He further alleges that between 2010 and 2017, a total of 126,000 licenses were automatically suspended pursuant to this policy. *Id.* ¶ 57. However, the testimony before the D.C. City Council that Mr. Zorgani cites in his Amended Complaint and attaches to his opposition to Defendants' motion does not support his allegation.[4] That testimony states that the suspensions were due to the "non-payment of ticket and court debt." Ex. 1 to Pls.' Opp'n, ECF No. 26-3, Testimony of Tzedek DC. The testimony does not state that 126,000 licenses were suspended based on the same facts alleged by Mr. Zorgani—specifically, after he paid his ticket and fine. Nor does the DMV's response to the Freedom of Information Act ("FOIA") request that Mr. Zorgani has attached to his opposition brief support his allegation. The response indicates that the request had been for the number of license suspensions for failure to pay court debt, defined as including, but not limited to "a debt resulting from a failure to pay a

---

[4] The Court properly takes these documents into consideration. See *Abhe*, 508 F.3d at 1059.

ticket or other fee or fine related to car registration, car insurance, parking violations, or moving violations" or a civil judgment. Ex. 2 to Pls.' Opp'n, ECF No. 26-4, Letter from David Glasser, Gen. Couns. & Acting FOIA Officer, Dep't of Motor Vehicles, to Justin Moyer (Nov. 7, 2017). The FOIA request was not for licenses suspended for the same reasons Mr. Zorgani's license was suspended.

For these reasons, Mr. Zorgani has failed to allege a pattern of similar violations. He has provided no factual support for his contention that 126,000 licenses were suspended even though the ticket and fine were paid. Rather, he has alleged only that his license was suspended even though he paid the ticket and fine. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to the failure-to-train claim.

### 3. Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Policy-or-Custom Claim

Defendants move for summary judgment on Plaintiffs' policy-or-custom claim, arguing that there is no genuine issue of material fact as to whether there is a policy to suspend driver's licenses after a fine is fully paid, because such a policy has never existed. Defs.' Mot., ECF No. 19-1 at 22-23. Plaintiffs respond that summary judgment is premature because no discovery has taken place. Pls.' Opp'n, ECF No. 26 at 10-11. Plaintiffs assert that "[t]he critical fact in dispute is

whether the suspension [of Mr. Zorgani's license] occurred
pursuant to the District's policy and custom of automatic
suspension of licenses for unpaid moving violations," *id.* at 10;
arguing that "[t]he problem with the Policy was its
implementation. It was set up to suspend licenses after 60 days
from the infraction, thereby allowing a time period when the
individual could pay the ticket and fine and still be
subsequently suspended," *id.* at 12. Plaintiffs argue that they
are entitled to discovery on, among other things, the details of
the computer system that implemented the policy. *Id.* at 15.

"[S]ummary judgment is premature unless all parties have
'had a full opportunity to conduct discovery.'" *Convertino v.*
*U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting
*Anderson*, 477 U.S. at 257); *accord Celotex*, 477 U.S. at 322
(summary judgment appropriate only "after adequate time for
discovery"); *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d
1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily 'is
proper only after the plaintiff has been given adequate time for
discovery.'" (quoting *First Chicago Int'l v. United Exch. Co.*,
836 F.2d 1375, 1380 (D.C. Cir. 1988))). Here, no discovery has
taken place, and Plaintiffs have explained the discovery they
seek. *Cf. Strang v. U.S. Arms Control & Disarmament Agency*, 864
F.2d 859, 861 (D.C. Cir. 1989) ("[A] court may deny a motion for
summary judgment or order a continuance to permit discovery if

the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."). Accordingly, the Court **DENIES** Defendants' pre-discovery Motion for Summary Judgment.

### D. Plaintiffs Have Adequately Stated a Claim for Loss of Consortium by Ms. Laasiri

Defendants also move to dismiss Plaintiffs' loss of consortium claim, arguing that Ms. Laasiri has not shown "a specific actual 'loss of services or affection,'" has not "establish[ed] that the 'emotional pain and anguish' impacted her marriage," and "has not stated any specific 'customary amenities of married life' that she lost after her husband's half of a night in jail." Defs.' Mot., ECF No. 19-1 at 15. For the reasons that follow, the Court partly grants and partly denies Defendants' Motion to Dismiss this loss of consortium claim.

In the District of Columbia, a plaintiff "may recover damages for loss of consortium due to an injury negligently inflicted upon" their spouse. *Curry v. Giant Food Co. of the Dist. of Columbia*, 522 A.2d 1283, 1294 (D.C. 1987). Consortium in this context "consists not only of material services, but also affection, companionship, sexual relations, and the customary amenities of married life." *Id.* To recover damages,

26

the plaintiff must show that the loss of consortium is related to the injury caused by the tortfeasor. *See id.*

As an initial matter, the Court grants Defendants' Motion to Dismiss this claim insofar as Plaintiffs maintain this claim on behalf of Mr. Zorgani. The District of Columbia recognizes that a plaintiff may recover on a claim related to an injury sustained by their spouse. *See Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1175 (D.C. 1997). It does not permit the injured spouse to recover for loss of consortium. Thus, only Ms. Laasiri may potentially maintain this claim against Defendants.

Plaintiffs have alleged sufficient facts to state a claim for loss of consortium. Plaintiffs allege that Ms. Laasiri "had no knowledge of her husband's whereabouts the night of November 8, 2014 and experienced severe emotional distress as a result." Am. Compl., ECF No. 18 ¶ 24. This "severe emotional distress," in addition to the "loss of companionship and society" with her husband, *id.* ¶ 76; are adequate to state a claim for loss of consortium, *see Curry*, 522 A.2d at 1294.

Defendants' argument that Plaintiffs have failed to plead causation is unpersuasive. Defs.' Reply, ECF No. 30 at 11. Plaintiffs allege the direct causal chain: (1) Mr. Zorgani's license was wrongfully suspended; (2) he was subsequently arrested; (3) Ms. Laasiri "had no knowledge of her husband's whereabouts the night of November 8, 2014"; and (4) she

"experienced severe emotional distress as a result." Am. Compl.,
ECF No. 18 ¶ 24. Plaintiffs further allege that Ms. Laasiri
"suffered loss of companionship and society with [Mr. Zorgani],
including the emotional pain and anguish related thereto." *Id.* ¶
76. These facts, taken as true at this stage in the proceedings,
are sufficient to state a claim for loss of consortium. For
these reasons, the Court **DISMISSES** Mr. Zorgani's claim for loss
of consortium and **DENIES** Defendants' Motion to Dismiss as to Ms.
Laasiri's loss of consortium claim.

### E.   It Is Premature to Dismiss Plaintiffs' Class Action Claims

Defendants move to dismiss Plaintiffs' class action claims.
Defs.' Mot., ECF No. 19-1 at 24-25. Defendants' motion is
premature as Plaintiffs have not sought to certify a class.
Pursuant to the Court Minute Order of July 11, 2019, the parties
will address any class certification issues following the
issuance of this Memorandum Opinion.

### F.   Plaintiffs' Violation of Statute Claim

In their Reply briefing, Defendants state that Plaintiffs' generic "Violation of Statute" claim does not establish a cause of action. Defs.' Reply, ECF No. 30 at 14. Defendants appear to argue that their policy-or-custom argument addressed the violation of a statute claim. *See id.* The Court will require supplemental briefing on this issue in a forthcoming Minute Order.

### V.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion for Summary Judgment. Pending the Court's determination on the supplementary briefing on the violation of statue claim, the following claims may proceed: (1) negligence claim against the District; (2) policy-or-custom Section 1983 claim against the District; and (3) loss of consortium claim by Ms. Laasiri. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **May 11, 2022**