**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MOHAMED MEDHI ZORGANI, *et al.*,

    *Plaintiffs*,

v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

No. 17-cv-2360-EGS-MAU

## REPORT AND RECOMMENDATION

Plaintiffs Mohamed Medhi Zorgani and his ex-wife Soukaina Laasiri sued the District of Columbia for negligence, violation of D.C. municipal regulations, violation of Zorgani's civil rights under 42 U.S.C. § 1983, and loss of consortium. ECF No. 18.[1] The District Court dismissed all of Plaintiffs' claims except for Zorgani's negligence claim against the District, Zorgani's § 1983 policy-or-custom claim against the District, and Laasiri's loss of consortium claim. *See* ECF Nos. 34, 35. The District Court referred this case to this Court for full case management and for a report and recommendation on dispositive motions. *See* Min. Order (Nov. 21, 2023). Before the Court are Plaintiffs' Motions for Partial Summary Judgment on Zorgani's negligence (Count I) and § 1983 (Count III) claim (ECF Nos. 72, 74-1) and for Class Certification (ECF No. 71), and the District's Motions for Summary Judgment on all of Plaintiffs' remaining claims (ECF No. 76), as well as its Motion to Stay briefing on Plaintiffs' class certification motion (ECF No. 73).

For the following reasons, the Court recommends **GRANTING** the District's Motion for Summary Judgment and **DENYING** Plaintiffs' Motion for Partial Summary Judgment. The Court

---

[1]    Citations are to the page number in the ECF header.

1

further recommends **DENYING as MOOT** the Plaintiffs' Motion for Class Certification and the District's Motion to Stay.

**BACKGROUND**

The facts material to the resolution of these motions are not genuinely disputed. On May 24, 2014, Zorgani received a traffic ticket, or "Notice of Infraction," for failing to yield the right of way. ECF Nos. 79-1 at ¶ 1; 81-1 at 1. The Notice of Infraction stated, "If your answer to a moving violation is not received within 60 calendar days, your license may be suspended." ECF Nos. 72-4 at 59; 77-1 at 155. The Notice of Infraction also notified Zorgani that he had "60 calendar days from the ticket issue date to request a hearing" and that, by paying the fine, Zorgani would be "admit[ting] to the infraction and waiv[ing] [his] right to a hearing." ECF Nos. 72-4 at 59; 77-1 at 155. On June 30, 2014, the DMV mailed a "Notice of Suspension" to Zorgani's home address. ECF Nos. 81-1 at ¶ 11; 77-1 at 55. The notice stated that Zorgani's "driver license or privilege to drive in the District of Columbia **will be suspended** if [he] fail[s] to answer the notice of infraction listed below within 60 calendar days of the date it was issued," and that he would "be subject to summary arrest if [he] operate[s] a motor vehicle in the District of Columbia with a suspended driver license." ECF No. 77-1 at 55 (emphasis added).

A month later, on July 30, 2014, Zorgani paid his ticket and associated late fee through the DMV's "eTIMS" system. ECF Nos. 72-4 at 14; 79-1 at ¶ 4; 81-1 at ¶¶ 18, 20. This was 67 days after the infraction. ECF Nos. 79-1 at ¶ 6; 81-1 at ¶ 19. At the time, the DMV provided a ten-day grace period before suspending a license for late payment, but because neither one of the notices informed Zorgani of this, he would not have known about this grace period when he paid his ticket beyond the 60-day period. ECF Nos. 79-1 at ¶ 3; 81-1 at ¶¶ 8, 10, 16. On August 21, 2014, the DMV suspended Zorgani's license for non-payment. ECF Nos. 79-1 at ¶ 10; 81-1 at ¶¶ 21, 50.

2

Because Zorgani's payment fell within the grace period after he received the initial notice of infraction, there is no dispute that the suspension was in error. ECF Nos. 79-1 at ¶ 35; 81-1 at ¶¶ 22–23. Both Parties agree that a communication error between eTIMS and the DMV's other computer system caused the erroneous suspension. ECF Nos. 79-1 at ¶ 7; 81-1 at ¶¶ 22–23.

In November 2014, a Metropolitan Police Department ("MPD") officer pulled Zorgani over for making an illegal left turn. ECF Nos. 79-1 at ¶ 12; 81-1 at ¶ 48. After checking Zorgani's license, the officer arrested Zorgani for driving with a suspended license. ECF Nos. 79-1 at ¶¶ 13–14, 16; 81-1 at ¶¶ 49–51. MPD detained Zorgani overnight and released him the next morning. ECF Nos. 79-1 at ¶¶ 17–18; 81-1 at ¶ 52. After he was released, Zorgani went to the DMV to determine the status of his license. ECF Nos. 79-1 at ¶ 19; 81-1 at ¶ 53. A DMV official told Zorgani his license suspension was an error. ECF Nos. 72-4 at 47; 79-1 at ¶ 20. The DMV Service Center Manager provided Zorgani an Official Notice of Correction. ECF Nos. 72-4 at 47; 79-1 at ¶ 21; 81-1 at ¶ 54. That letter stated: "Your driving privilege is NOT disqualified, suspended, or revoked. We apologize for the inconvenience resulting from this error." ECF No. 72-4 at 47.

## LEGAL STANDARD

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The movant bears the initial burden of identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The mere existence of some factual dispute,

however, is insufficient on its own to bar summary judgment. *Anderson*, 477 U.S. at 247–48. The dispute must also pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In reviewing the record, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See, e.g.*, *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020). The non-movant, however, must point to specific facts in the record that reflect a genuine issue warranting trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324. The non-movant "need not present evidence in a form that is currently admissible," but "must produce evidence capable of being converted into admissible evidence." *Klayman v. Judicial Watch, Inc.*, 6 F.4th 1301, 1315 (D.C. Cir. 2021). Conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ANALYSIS

### I.        Count I: Zorgani's Negligence Claim

Both Parties move for summary judgment on Zorgani's negligence claim. *See* ECF Nos. 74-1 at 15–22; 76 at 23–31. Plaintiffs argue that the District was negligent because it failed to provide notice to Zorgani that his license was going to be suspended and failed to update the automated license suspension systems to comply with alleged industry standards. ECF No. 74-1 at 15. The District principally argues that the public duty doctrine bars Zorgani's negligence claim because Zorgani has no special relationship with the District. *See* ECF No. 76 at 29–31.

To prove negligence, a plaintiff must establish three elements: (1) duty; (2) breach of that duty; and (3) an injury proximately caused by that breach. *Hoodbhoy v. District of Columbia*, 282

4

A.3d 1092, 1096 (D.C. 2022).  The Court first addresses whether there is a triable issue on the first essential element of Count I: whether the District owed a duty to Zorgani sufficient to maintain a claim for negligence.

### A.      The District Owed No Duty to Zorgani.

  1.      *Zorgani has Failed to Overcome the Public Duty Doctrine on his Theory that the District Failed to Provide Sufficient Notice.*

Zorgani first argues that the District negligently failed to provide him notice that his license was going to be suspended.  ECF No. 74-1 at 15.  Because the District does not owe a general duty to the public as a matter of law, a plaintiff seeking to hold the District liable for negligence must plead and prove that "the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public."[2]  *Powell v. District of Columbia*, 602 A.2d 1123, 1129 (D.C. 1992) (quoting *Khlar v. District of Columbia*, 576 A.2d 718, 719 (D.C. 1990)).  As such, the doctrine operates to shield the District from liability associated with providing public services.  *Powell*, 602 A.2d at 1125.  The D.C. Court of Appeals construes this doctrine broadly to limit the District's liability.  *Id.* at 1128.

A plaintiff can show a special relationship arises in at least two ways.  *See Woods v. District of Columbia*, 63 A.3d 551, 553–54 (D.C. 2013) (discussing the "somewhat varying formulations to describe the circumstances in which such a special relationship will arise").  First, a plaintiff may show direct or continuing contact with the government that leads to the plaintiff's justifiable reliance, which is often called the "*Platt* test."  *See Powell*, 602 A.2d at 1130 (citing *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C. 1983)).  Second, a plaintiff may point to a statute or

---

[2]      Courts use special relationship and special duty somewhat interchangeably.  *See Snowder v. District of Columbia*, 949 A.2d 590, 603 (D.C. 2008) ("This 'special duty' is also referred to as a 'special relationship.'") (citation omitted).

regulation that prescribes "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." *See id.* at 1129 (internal citations and quotation marks omitted). Courts construe this exception narrowly. *See Woods*, 63 A.3d at 554.

Plaintiffs do not dispute that the District's act arose from a public service, but fail to address the public duty doctrine with any analytical rigor. *See* ECF No. 79 at 8–11. Construing Plaintiffs' arguments generously, Plaintiffs raise two separate theories of how a special relationship formed between Zorgani and the District: (1) through Zorgani's contact with the DMV; and (2) by regulation.

a.      <i>Plaintiffs Did Not Have Direct Contact with the DMV to Create a Special Relationship.</i>

Plaintiffs argue that Zorgani had direct contact with the DMV sufficient to create a special relationship as a matter of law. *See* ECF No. 79 at 8–11 (arguing "contact with the DMV was direct, transactional, and consequential"; "Plaintiff had individualized contact with the DMV"; "Mr. Zorgani interacted directly with the DMV"). They also argue Zorgani reasonably relied to his detriment on "the District's affirmative actions." *Id.* at 12. The District contends that there is no genuine dispute to suggest that Zorgani had a special relationship because he paid his fine late and failed to take the affirmative action necessary to prevent suspension. ECF No. 82 at 20–21.

As stated above, a plaintiff may meet the "*Platt* test" to establish a special relationship by showing direct or continuing contact with the government and justifiable reliance on the part of the victim. *See Platt*, 467 A.2d at 151. This test covers cases where contact caused the victim to rely on the District to fulfill a special duty to it. *See generally Powell*, 602 A.2d at 1130–31 (discussing how the *Platt* test shows when the District assumed a greater duty to the victim than the duty it owed to the public at large). Direct or continuing contact "sets the victim apart from the general public." *Id.* at 1130 (citation modified). The contact must be a "direct transaction" or

6

an "arms-length relationship" in which the city's agent is dealing directly with the plaintiff. *See id.* Justifiable reliance means the plaintiff had "particular or special reliance." *Snowder v. District of Columbia*, 949 A.2d 590, 604 (D.C. 2008) (citation modified). Reliance exists only when the District undertakes an affirmative act. *See id.*; *Powell*, 602 A.2d at 1131–32. Thus, the District will not be liable for an official's inaction or futile action. *See Snowder*, 949 A.2d at 604.

Zorgani fails to raise a genuine dispute that he had direct or continuing contact because his only contact was the late payment of his ticket online. Although a fee payment may be evidence of direct contact in certain cases, payment alone is insufficient to create a special relationship. *See Nealon v. District of Columbia*, 669 A.2d 685, 692 (D.C. 1995) (holding that appellants' payment of water rates did not create a special relationship to render the District liable for negligence in maintaining fire hydrants). Zorgani does not show that paying his ticket was a different form of contact than the District has with the general public because everyone must pay their traffic tickets. *See Auto World, Inc. v. District of Columbia*, 627 A.2d 11, 13–14 (D.C. 1993) (rejecting the plaintiff's argument that the public duty doctrine is inapplicable merely because the District is "function[ing] in a commercial capacity" and "charging a non-waivable fee").

Zorgani also fails to establish a genuine dispute as to justifiable reliance. Plaintiffs argue that Zorgani relied on the District's "affirmative actions of releasing him from any further sanctions after accepting his fine fee." ECF No. 79 at 11. Failure to provide notice, however, is not an affirmative action. *See Snowder*, 949 A.2d at 604. Nothing in the record suggests that the District took any action after Zorgani paid his ticket. At most, the eTIMS system automatically accepted Zorgani's payment. ECF Nos. 72-4 at 14; 72-4 at 54 ¶¶ 154:17–155:2 ("If you paid online or something you get confirmation if you're payment was successful, that's it. . . . [eTIMS] doesn't generate anything, thank you for your payment, here's your receipt. It doesn't do that.").

Plaintiffs further rely on *Powell* to show justifiable reliance, but that case is distinguishable. *See* ECF No. 79 at 10–11. In *Powell*, the public duty doctrine did not bar the District's liability for negligently issuing the wrong automobile license tags and registration numbers. *See* 602 A.2d at 1124–25. There, the plaintiff engaged in a direct transaction with the Bureau of Motor Vehicle Services through her application and payment for registration. *See id.* at 1131. That transaction "was an undertaking by the District to her individually that the number on her license tags and registration belonged only to the car she owned." *Id.* (citing D.C. Code § 40-102(c) (1990 Repl.)).

Here, although paying for registration and paying a ticket appear similar, the *Powell* court was clear that payment *alone* does not give rise to a special relationship. *Id.* Second, the *Powell* plaintiff relied on the District's specific representation that her car would be correctly registered and her registration number would be correctly entered into the system. *Id.* at 1132. Here, there was no affirmative undertaking or constructive representation. Lastly, *Powell* involved a statute governing car registration, which has a statutory element not present here. *See id.* at 1130 ("A statute which affords an individual the opportunity to seek its protection by taking certain actions may give rise to a special duty to that individual."). Specifically, the District's duty to issue a correct license plate and registration arose from a *direct* transaction with the plaintiff. *Id.* at 1132 ("The statutory scheme for lawful operation of a motor vehicle placed certain responsibilities on appellant which, upon their fulfillment, in return placed responsibilities on the District to her as the owner of the registered vehicle."). Here, Plaintiffs identify no similar obligation on the District or statute that operates in combination with Zorgani's payment to give rise to a special duty. At most, D.C. Code § 50-2302.05(e) merely prescribes consequences for licensees. It does not, however, impose reciprocal affirmative requirements on the District analogous to certifying that a driver's tag number belongs to one particular car.

       b.      *Plaintiffs Fail to Cite Any Statute or Regulation Creating a Special Relationship.*

Plaintiffs also attempt to show a special relationship by arguing that the District breached § 307.3 of the D.C. Municipal Regulations, which in Plaintiffs' view provides a duty for the District to provide notice and a hearing. ECF No. 79 at 8. Section 307.3 of the DCMR states:

> Whenever the Director, acting under this chapter, proposes to revoke or suspend the license of any person for any reason which does not require a revocation, a notice of proposed suspension or revocation shall be prepared setting forth the proposed action and the grounds for the proposed action in sufficient detail to permit that person to understand fully the nature of the proposed action and the reasons for the proposed action.

D.C. Mun. Regs. tit. 18, § 307.3.

To establish a special relationship through a statute or regulation, the regulation must provide "mandatory acts clearly for the protection of a particular class of persons rather than the general public as a whole." *Nealon*, 669 A.2d at 692 (citation modified). A special class does not exist, however, when any person could be in that class at any time. *See Hines v. District of Columbia*, 580 A.2d 133, 138 (D.C. 1990). For example, regulations governing ambulances do not create a special class because virtually every citizen may need emergency services. *Id.* (finding no class of "people who are seriously ill or injured and who receive emergency medical care and transportation by the Emergency Ambulance Division").

Plaintiffs' reliance on municipal regulation § 307.3 is misplaced. Under that regulation, "[w]henever the Director . . . proposes to revoke or suspend the license of any person for any reason *which does not require a revocation*, a notice of proposed suspension or revocation shall be prepared . . . ." *See* D.C. Mun. Regs. tit. 18, § 307.3 (2014) (emphasis added). Nothing in the regulation's language suggests that the regulation is protecting a particular class. Moreover, the regulation applies to situations where the Director of the DMV is acting *within her discretion* to

suspend or revoke a license. *See Osborne v. District of Columbia*, 169 A.3d 876, 883 (D.C. 2017) (discussing how § 307.3 relates to revocation under the DMV's discretionary authority). Here, Zorgani's suspension was mandatory. *See* D.C. Code § 50-2302.05(e) (2014) (amended 2021).

> 2. *Zorgani has Failed to Overcome the Public Duty Doctrine on his Theory that the District Negligently Failed to Update its License Suspension System.*

Zorgani's other theory of negligence is that the District failed to update the automated license suspension systems to comply with alleged industry standards. ECF No. 74-1 at 15. Zorgani fails to make any meaningful argument other than a cursory argument that the public duty doctrine is inapplicable to this particular theory. ECF No. 79 at 8, 11 ("This claim is not a duty owed to the public at large. Instead, this claim pertains to the District's internal failure to adhere to professional standards of care in designing a system it uses to take legal action against individuals."). Plaintiffs have failed to articulate how the DMV's operation of its computer systems is not a public service. Nor could they. The revocation and suspension of licenses is plainly part of the service that the DMV undertakes for the public at large. *See Hines*, 580 A.2d at 136 ("Appellant would distinguish ambulance service from police and fire protection on the basis that emergency medical attention is summoned for and focuses on a particular individual, whereas the duty to prevent crime and protect against fires is owed to the public at large. We disagree.").

For these reasons, Zorgani has failed to raise a genuine issue of material fact on the essential element that the District owed him an actionable duty. The failure on this essential element of negligence is, on its own, sufficient to warrant summary judgment in the District's favor.

**B.    There is No Genuine Issue of Material Fact that the District Breached Its Duty.**

Even if the public duty doctrine did not shield the District, the District is still entitled to summary judgment on Zorgani's negligence claim because he fails to raise a genuine issue of

material fact that the District breached any duty to Plaintiffs.  To prove breach, Plaintiffs must establish the applicable standard of care and show that the District's conduct deviated from that standard.  *See Thurman v. District of Columbia*, 282 A.3d 564, 572 (D.C. 2022).  Plaintiffs may establish the standard of care by looking at the practices that other governmental facilities generally follow or some nationally-recognized standard.  *Id.* at 573 (citation modified).  Plaintiffs first argue that the District was negligent *per se* because the DMV's policy of not providing notice violates § 302 of the D.C. Municipal Regulations.  ECF No. 74-1 at 16–17.  The District argues that that regulation does not create a legal duty.  ECF No. 77 at 25.  The District also maintains that § 307.3 is inapplicable.  ECF Nos. 76 at 23; 77 at 26.

To prevail on a negligence *per se* theory, a plaintiff may "rely on a statute or regulation as proof of the applicable standard of care."  *McNeil Pharma. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996).  If a plaintiff proves the defendant violated that statute, the defendant may be negligent as a matter of law.  *Id.*  But the statute or regulation must be meant to promote public safety and must create specific guidelines to govern behavior.  *Night & Day Mgmt. v. Butler*, 101 A.3d 1033, 1039–40 (D.C. 2014).  Moreover, the statute must protect a class that includes the plaintiff, and the defendant must be the person on whom the statute imposes specific duties.  *Id.*

Title 18, Chapter 3 of the D.C. Code of Municipal Regulations governs the cancellation, suspension, or revocation of licenses.  D.C. Mun. Regs. tit. 18, §§ 300–312 (2014) (amended 2022).  The regulations require the Director of the DMV to send a notice to a motorist when the Director intends to suspend or revoke the motorist's license for any discretionary reason.  *See* D.C. Mun. Regs. tit. 18, § 307.3 (2014); *see also Osborne*, 169 A.3d at 884 (interpreting regulations to require notice).  As discussed above, the regulations do not protect a specific class of individuals.  Nor do they impose any duties on the District.  *See Night & Day Mgmt.*, 101 A.3d at 1039–40.

11

Moreover, the notice regulation that Plaintiffs identify is inapplicable because the plain language provides that when the Director of the DMV "proposes to revoke or suspend the license of any person for any reason *which does not require a revocation*, a notice of proposed suspension or revocation shall be prepared . . . ." D.C. Mun. Reg. tit. 18, § 307.3 (2014) (emphasis added). This regulation does not apply to Zorgani because, again, D.C. Code § 50-2302.05(e) governs suspension of licenses. Pls.' SOF ¶ 4. The District complied with this provision when it included a notice on the back of Zorgani's ticket. *See* ECF No. 72-4 at 3, 59.

Plaintiffs also argue that the DMV breached a standard of care by failing to update its automated computer system. ECF No. 74-1 at 18–22. Plaintiffs argue their expert testimony establishes a national standard of care. *Id.* at 18–19. Further, in Plaintiffs' view, the DMV breached this standard by failing to properly update its automated systems. *Id.* at 20–21. The District argues that Plaintiffs' experts have failed to articulate any national standard of care. ECF No. 76 at 24. In the alternative, the District maintains that there is no evidence that the DMV violated its standard because of a one-time glitch. *See id.* at 26–27.

In cases where the issue relates to science beyond the ken of the average layperson, a plaintiff must provide expert testimony. *Thurman*, 282 A.3d at 573. The expert must clearly articulate and reference a standard of care. *See Varner v. District of Columbia*, 891 A.2d 260, 269 (D.C. 2006) (citation modified). The expert should identify a standard in "practices in fact generally followed by other comparable governmental facilities or some nationally-recognized standard." *Thurman*, 282 A.3d at 573 (internal citations and quotation marks omitted). The expert "must *link* his testimony to [a] certification process, current literature, conference or discussion with other knowledgeable professionals, at a national level." *Cardenas v. Muangman*, 998 A.2d 303, 308 (D.C. 2010) (citation modified). To establish that a standard sets a national norm, an

12

expert must show the norm has been accepted as controlling in similar facilities. *See Briggs v. WMATA*, 481 F.3d 839, 847 (D.C. Cir. 2007).

Plaintiffs rely on the report of two experts: Mitch Martin and Dmitri Adler. *See* ECF No. 76-1 at 118–22. The experts opine that the District failed to adhere to appropriate standards that would have prevented the glitch. *Id.* The experts cite three organizations that set forth the standards: (1) the International Organization for Standardization; (2) the International Electrotechnical Commission; and (3) the Institute of Electrical and Electronics Engineers. *Id.* at 119. The report is insufficient to establish a standard of care. The experts fail to clarify whether the standard is applicable to other comparable governmental facilities or whether it is some nationally-recognized standard. Specifically, Martin attributes the purported standard of care to computer software systems worldwide, as opposed to systems associated with municipal or government services. ECF No. 76-1 at 142. Further, Adler similarly states that these certain standards provide "a common framework for a standard of care." *Id.* at 130. A "common framework" or a "blueprint," he acknowledges, does not show acceptance of a norm in similar facilities. *Id.* at 130–31. Plaintiffs' failure to establish a standard of care is fatal to their negligence claim. *Briggs*, 481 F.3d at 848 (holding that plaintiff's failure to establish a standard of care entitled defendants to summary judgment).

Most importantly, even assuming Plaintiffs establish a national standard of care, they fail to satisfy the essential element that the District departed from or breached that standard of care. As Martin himself acknowledged, "there's no such thing as a glitch-free system." ECF No. 76-1 at 143. Because there is no dispute that what happened here was a one-time glitch in the District's system, this does not suffice even under Martin's view to raise a genuine issue that a breach occurred. Nor does Zorgani present any other meaningful, direct evidence to raise a genuine issue

of a breach on the District's part.  ECF No. 76-1 at 143; *see Varner*, 891 A.2d at 269; *Thurman*, 282 A.3d at 573.  For the additional, independent reason that Plaintiffs have failed to raise a genuine issue of material fact on the element of breach, the Court recommends granting the District's Motion and denying Plaintiffs' Motion as to Count I.

## II.        Count II: Zorgani's Violation of Statutes Claim

In Count II, Zorgani asserts a claim for violation of four provisions of Title 18 of the D.C. Municipal Regulations, Vehicles, and Traffic.  ECF No. 18 ¶¶ 42–46 (citing D.C. Mun. Regs. tit. 18, §§ 305, 307.3–307.4, 308.1 (2014) (amended 2016)).  Based on Zorgani's inconsistent statements about this claim, there is confusion regarding whether it is a distinct claim for negligence *per se* or merely a different theory of his negligence claim.  *Id.* at 32.

Assuming the claim is still live, the District moves for summary judgment on Count II under two alternative theories.  First, the District contends that this claim did not survive the motion to dismiss.  ECF No. 76 at 32.  In the alternative, the District argues that the claim fails as a matter of law because the regulations do not support a negligence *per se* theory.  *Id.* at 32–33.

Other than arguing that 18 DCMR § 307.3 creates a mandatory duty which the District breached, Zorgani fails to squarely respond to the District's arguments or establish a genuine issue of material fact on a negligence *per se* theory (as discussed in further detail above).  ECF No. 81 at 14.  Specifically, Plaintiffs fail to explain under what theory they may bring a cause of action for violation of these regulations.  Nor has the Court located any authority that interprets the D.C. Municipal Regulations to create an independent cause of action.  Indeed, Plaintiffs' references to the regulations appear to support their negligence claim under Count I.  ECF Nos. 74-1 at 15–17; 81 at 14.  Because Plaintiffs fail to articulate a cause of action entitling them to a trial or judgment as a matter of law, the Court recommends granting the District's Motion as to Count II.

14

### III.    Count III: Zorgani's 42 U.S.C. § 1983 Claim

#### A.    Parties' Arguments

Both Parties move for summary judgment on Zorgani's § 1983 claim.  *See* ECF Nos. 74-1 at 9–15; 76 at 15–23.  Zorgani argues that the District violated his Fifth Amendment due process rights because the District suspended his license without notice, which deprived him of his property interest in his license.[3]  ECF No. 74-1 at 11.  Zorgani argues that the District should have sent him notice after he paid his fine but before his license was suspended, as well as *after* his license was suspended.  ECF Nos. 74-1 at 10; 81 at 9 (arguing that "[o]nce . . . the District processed his timely payment without warning of impending suspension, the subsequent deprivation of his license without new notice violated due process."); 18 at ¶¶ 49–50.  He further argues that the District's due process violation derived from a government policy.  *Id.* at 14.

The District argues that Zorgani's due process claim fails because there is no genuine issue of material fact that the DMV suspended Zorgani's license knowingly.  ECF No. 76 at 15.  With respect to the notice issue, the District argues that it provided Zorgani with adequate notice because there is no dispute that, after 30 days passed without Zorgani having paid his ticket, the DMV sent *another* written notice, this time warning Zorgani that his license "***will be suspended*** if you fail to answer the notice of infraction . . . within 60 calendar days of the date it was issued."  *Id.* at 16–17 (emphasis added).  The District maintains that the two notices it sent to Zorgani were sufficient to satisfy due process.  ECF Nos. 76 at 16–17; 77 at 18 ("Twice warned that his license would be

---

[3]    Plaintiffs also argue that the District violated Zorgani's Fourteenth Amendment rights.  The Fourteenth Amendment, however, "applies only to the states" and does not apply to the actions of the District or those of its officials.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1953).  Because the requirements of the Fifth Amendment are the same as those of the Fourteenth Amendment, the Court will analyze Zorgani's arguments under the Fifth Amendment.  *See Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991).

15

suspended if he failed to pay, Zorgani cannot complain that he lacked notice."). Finally, the District contends that it did not have a widespread practice or custom that caused any potential violation, but rather that it was a one-time computer error which caused the license suspension. *Id.* at 20–21.

### B. There is No Genuine Issue of Material Fact that Zorgani Failed to Receive Notice Under the Fifth Amendment.

Section 1983 creates a civil action against a person who, acting under color of state law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The District may be liable under § 1983 only if a municipal policy or custom caused the injury. *See Monell v. Dep't of Soc. Sec. Servs.*, 436 U.S. 658, 694 (1978). In evaluating municipal liability, courts conduct a two-part inquiry: (1) whether a constitutional violation caused the plaintiff's harm; and (2) if so, whether the District is liable for that violation. *Doe v. District of Columbia*, 206 F. Supp. 3d 583, 603 (D.D.C. 2016) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

Regarding the first inquiry, the Fifth Amendment's Due Process Clause provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. To prove a due process violation, a plaintiff must establish two elements. *See Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). First, a plaintiff must identify a property interest that is protected by the Constitution. *Id.* Second, a plaintiff must establish that the government failed to provide sufficient process. *Id.* Process includes both notice and an opportunity to be heard. *Id.* Both Parties agree that Zorgani had a protected property interest in his driver's license. *See* ECF Nos. 74-1 at 9–10; 76 at 18; *see also Bell v. Burson*, 402 U.S. 535, 539 (1971) ("Suspension of issued licenses thus involves state action that adjudicates important

interests of the licensees.  In such cases the licenses are not to be taken away without that procedural due process . . . .").

One of the core issues of Count III is whether the two notices that Zorgani received before his license was suspended were constitutionally sufficient.  Courts use two separate frameworks to answer this question.  First, under *Mullane v. Central Hanover Bank & Trust Company*, courts evaluate whether notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).  Second, under *Mathews v. Eldridge*, courts use a balancing test to determine the "precise form of notice and the precise kind of hearing required."  *Propert*, 948 F.2d at 1332 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976)).  Under the *Mathews* framework, courts balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation through the current procedures and the value of additional safeguards; and (3) the government's interest, including the fiscal and financial burdens that additional or other procedural requirements would create.  *See Mathews*, 424 U.S. at 335.

The Parties invoke both frameworks throughout their briefing.  *See, e.g.*, ECF Nos. 74-1 at 11–14; 76 at 18–19.  Given that both frameworks evaluate notice, there is some overlap between them.  *See Propert*, 948 F.2d at 1334 (noting that "the constitutional requirements of notice and an opportunity to be heard are interrelated, and that the form and timing of the hearing required may vary depending upon the adequacy of the initial notice provided.").  *Mathews* tests more generally "what process is due to protect against an erroneous deprivation."  *Mackey v. Montrym*, 443 U.S. 1, 10 (1979).  *Mullane*, by contrast, focuses only on the method of notice.  *See Dusenberry v. United States*, 534 U.S. 161, 168 (2002) (clarifying that *Mullane*, not *Mathews*, applies to "questions regarding the adequacy of the method used to give notice"); *see also Nozzi v. Hous.*

*Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 n.17 (9th Cir. 2015) ("[T]he Supreme Court applies a streamlined test when the only question to be decided is whether the government has provided sufficient notice and there is no request for further procedural safeguards.").  The Court first addresses the Parties' arguments under *Mullane* and then turns to *Mathews*.

> 1.  *There is no triable issue on the method of notice to Zorgani under* Mullane.

To satisfy *Mullane*, the District must have sent Zorgani notice that was reasonably calculated to apprise him of the pendency of the action and afforded him the opportunity to present his objections.  339 U.S. at 314.  The content of the notice must have "provided an accurate picture of what was at stake and adequately explained how [Zorgani] should respond."  *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (citation modified).  There is no dispute that the District provided Zorgani with two separate warnings before it suspended his license.  First, Zorgani's Notice of Infraction included a warning that "If your answer to a moving violation is not received within 60 calendar days, your license or your privilege to drive in the District of Columbia may be suspended."  ECF No. 81-1 at ¶ 6 (citing ECF No. 72-4 at 59).  This language was consistent with D.C. law in 2014, which required a Notice of Infraction to advise that "failure to answer . . . within 60 calendar days from the date of issuance or greater period established by the Director by regulation shall by operation of law result in a suspension of his District operator's permit."  D.C. Code § 50-2302.04(c) (2014) (amended 2021).  Second, the DMV sent Zorgani a "Notice of Suspension" document on June 30, 2014.  ECF No. 81-1 at ¶¶ 11–17; *see* ECF No. 76-1 at 55.[4]  In that document, the DMV again informed Zorgani of the

---

[4]     Although Zorgani denies that there is evidence that the DMV actually mailed Zorgani that document, ECF No. 81-1 at ¶ 11, he does not meaningfully dispute through competent, admissible evidence that he received correspondence titled "Notice of Suspension."  ECF No. 81 at 7 (arguing why the Notice of Suspension was inadequate, not that he never received it).

consequences of failing to answer his ticket within sixty days: "Your driver license . . . **will be suspended** if you fail to answer the notice of infraction within 60 calendar days of the date it was issued." ECF No. 76-1 at 55 (emphasis added).

Plaintiffs contend that these notices did not provide Zorgani with "definitive, individualized notice that a suspension was imminent." ECF No. 81 at 7. But the Notice of Suspension plainly stated that Zorgani's license "*will be suspended*." ECF No. 76-1 at 55 (emphasis added). The District informed Zorgani that failure to pay within 60 days would result in suspension. D.C. Code § 50-2302.05(e) (providing that failure to answer a ticket "within 60 calendar days after the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation" will result in suspension of the license "until payment of the penalties, fines, and a reinstatement fee"). Although Plaintiffs insist that the District was required to send Zorgani a post-suspension notice, the pre-deprivation notices in this case satisfied constitutional due process under the law of this Circuit.

For example, in *English v. District of Columbia*, the D.C. Circuit held that the District, through St. Elizabeth's Hospital, provided adequate notice it would seize money from a patient's account. 717 F.3d 968, 973 (D.C. Cir. 2013). The patient signed a form acknowledging that he was responsible for any charges not covered by insurance. *Id.* at 972. The patient received a bill that stated that the hospital reserved the right to transfer the patient's funds after seven days of non-payment. *Id.* The hospital did not send the patient an additional notice *again* after that seven-day period. *Id.* at 970. Acknowledging that "beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible," the Circuit held that the notice plaintiff received "easily" satisfied the *Mullane* standard. *Id.* at 972–73; *see also Barkley*, 766 F.3d at 31–32 (holding that government met *Mullane* standard and

19

provided constitutionally-sufficient notice by providing notice to court security officers prior to their termination that failure to meet certain standards or provide additional medical information might result in removal from service).

Accordingly, the District's notices clearly satisfied due process under the law of this Circuit. *See also Evans v. City of New York*, 308 F. Supp. 2d 316, 325–26 (S.D.N.Y. 2004) (holding notice was sufficient when DMV computer autogenerated and mailed a notice to plaintiff that his license would be suspended if he failed to pay a fine by a certain deadline); *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007) (holding notice was sufficient when government mailed doctor notice that his medical license would be revoked if he failed to respond within ninety days); *1417 Belmont Cmty. Dev., LLC v. District of Columbia*, 302 A.3d 512, 519–21 (D.C. 2023) (holding notice was sufficient when government stated failure to correct building violations within fifteen days would result in razing of building).

Plaintiffs also argue that the District complied with the law because Zorgani's ticket did not identify the ten-day grace period. ECF No. 81-1 at ¶ 7. According to Plaintiffs, that grace period fit the statute's requirement of "60 calendar days . . . or a greater period of time." D.C. Code § 50-2302.04(c); *see* ECF No. 81-1 at ¶ 7. Plaintiffs' argument is unavailing for two reasons. First, the grace period is not part of the statute. The statute states "60 calendar days . . . or a greater period established by the Director by regulation . . . ." D.C. Code § 50-2302.04(c). Plaintiffs have not presented any evidence that the Director of the DMV incorporated the grace period by regulation. Instead, testimony shows the grace period was merely an internal policy. ECF No. 76-1 at 29–30. Second, even if the District had violated the statute, "the fact of a state law violation does not resolve whether a plaintiff has been deprived of due process." *Tate v. District of*

*Columbia*, 627 F.3d 904, 908 (D.C. 2010) (citation modified).  The question is whether Zorgani had notice and opportunity to be heard, which he did.  *Id.*

> 2.      *There is no triable issue on the adequacy of notice to Zorgani under* Mathews.

Next, under the *Mathews* test, Plaintiffs identify three points in time that the District should have provided notice: (1) pre-suspension; (2) after Zorgani paid his ticket; and (3) at the time of suspension.  *See* ECF Nos. 74-1 at 13–14; 81 at 10.  Plaintiffs appear to argue that some additional notice (the extent of which is unclear) would have served as an appropriate procedural safeguard. The District argues that notice was sufficient and that despite Zorgani's suspension, the "District's procedures adequately guarded against licensees being unaware when their driver's license may be suspended."  ECF No. 77 at 21.  Because the District provided Zorgani with adequate pre-deprivation notice (as discussed above), the Court will weigh the *Mathews* factors as to Plaintiffs' argument regarding post-deprivation notice.

*Private Interest.*  For the first factor, the private interest, it is well-settled that a driver's interest in his license is substantial because he cannot be made whole if his suspension is later vacated.  *See Dixon v Love*, 431 U.S. 105, 113 (1977).  That said, the nature of the interest requires only "something less than an evidentiary hearing . . . prior to adverse administrative action." *Dixon*, 431 U.S. at 113 (quoting *Mathews*, 424 U.S. at 343).

*The risk of erroneous deprivation and the value of additional safeguards.*  As for the second factor, the risk of erroneous deprivation and the value of additional safeguards, in 2014, D.C. law required a ticket to include notice of the 60-day warning.  *See* D.C. Code § 50-2302.04(c).  As an initial matter, a pre-deprivation hearing was not required because due process is satisfied when a driver can dispute the underlying offense resulting in suspension.  *See Dixon*, 431 U.S. at 110, 113–14 (automatic suspension for three convictions within a 12-month period); *Mackey*, 443 U.S.

21

at 14 (automatic suspension for refusing to take breathalyzer test). Plaintiffs do not dispute Zorgani's original moving violation. ECF No. 79-1 at ¶ 1. Indeed, Zorgani eventually admitted to that violation when he paid his ticket, and the ticket warned that by paying the fine, he would be "admit[ting] to the infraction and waiv[ing] [his] right to a hearing." ECF Nos. 72-4 at 59; 77-1 at 155. Because Plaintiffs cannot rely on lack of a pre-deprivation hearing, their argument rests on two issues: lack of post-suspension notice and lack of post-deprivation review.

First, Plaintiffs maintain that notice and review would have provided Zorgani the opportunity to discover the error in the processing of his payment and challenge his suspension, which would have prevented his ultimate arrest. ECF No. 74-1 at 14. The District argues that this was a one-time computer error, and there is no evidence of a similar suspension having occurred. ECF No. 77 at 21. Accordingly, the risk of an erroneous deprivation from the procedures is near zero. *Id.* There is no dispute that an error *did* occur. Plaintiffs are likely correct that if Zorgani had notice, he would not have driven on a suspended license. Plaintiffs fall short, however, because the case law (as discussed above) holds that pre-deprivation notice is all that is required. *See Cokinos v. District of Columbia*, 728 F.2d 502, 503 (D.C. Cir. 1983) (rejecting assertion that plaintiff could not challenge his car towing when back of parking ticket advised of hearing). Additionally, courts evaluate risk as applied to the "*generality* of cases, rather than the rare exceptions." *See Mackey*, 443 U.S. at 14. Procedures need not be so comprehensive as to preclude any possibility of errors. *Id.* at 13; *see Dixon*, 431 U.S. at 113 (acknowledging possibility of clerical error). On this record, Zorgani's case was the rare exception.[5] What Zorgani actually

---

[5] The Parties dispute whether there were any other similar erroneous suspensions. ECF No. 81-1 at ¶ 41. Plaintiffs, however, have failed to offer sufficient evidence of similar erroneous suspensions. Rather, Plaintiffs simply "object to the use of any portions of a report from the District's late-named expert." ECF No. 81-1 at ¶ 41.

seeks is notice and an opportunity to be heard before a one-time computer system error occurred, which is not possible in light of the fact that it is just that—an unanticipated error. It is difficult to see how any post-deprivation review would have prevented the unfortunate series of events that occurred in this case. Moreover, the risk of error here is so miniscule in light of the one-time computer glitch, that additional, post-deprivation notices were not required as a matter of law. *See Mackey*, 443 U.S. at 13; *see Dixon*, 431 U.S. at 113.

*The Government Interest.* Finally, with respect to the government interest, the Supreme Court has recognized the "substantial public interest in administrative efficiency" and "the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard." *Dixon*, 431 U.S. at 114. Summary, automatic license suspensions serve the government's interest in public safety. *See Mackey*, 443 U.S. at 18. In weighing the three *Mathews* factors as a whole, there is no genuine issue of material fact regarding whether the process provided to Zorgani fell short of the constitutional standard. Accordingly, the Court recommends granting the District's Motion on Zorgani's § 1983 claim and denying Plaintiffs' Motion. Because Plaintiffs fail to establish a predicate constitutional violation, the Court need not address whether a policy or custom caused the constitutional violation.

## IV. Count IV: Loss of Consortium Claim

The District moves for summary judgment on Plaintiffs' loss of consortium claim, arguing that a loss of consortium claim cannot stand alone. ECF No. 76 at 34. A loss of consortium claim is viable only if a plaintiff has prevailed on an underlying negligence claim. *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 331 (D.C. 2007). Because the Court recommends granting the District's Motion on Zorgani's negligence claim, Plaintiffs' loss of consortium claim fails as a

23

matter of law.  The Court, thus, recommends granting the District's Motion on Count IV of Plaintiffs' Complaint.

## CONCLUSION

For the foregoing reasons, the Court recommends **GRANTING** the District's Motion for Summary Judgment (ECF No. 76) and **DENYING** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 72).  Because the District is entitled to judgment as a matter of law on all of Plaintiffs' claims, the Court further recommends **DENYING** Plaintiffs' Motion for Class Certification (ECF No. 71) and the District's Motion to Stay (ECF No. 73) as **MOOT**.

**SO ORDERED**.

Date:    August 7, 2026

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

**<u>Local Civil Rule 72.3(b) Notice</u>**

The Parties are advised that under the provisions of Local Rule 72.3(b), any Party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within fourteen days of the party's receipt of the Report and Recommendation.  The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections.  Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

\* \* \*